STATE OF MINNESOTA                          DISTRICT COURT

COUNTY OF HENNEPIN                 FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| DISABILITY SUPPORT ALLI-ANCE, on behalf of its members; and SCOTT SMITH,<br><br>     *Plaintiffs,*<br><br>v.<br><br>PGJ PROPERTIES,<br><br>     *Defendant.* | Case No. _____<br><br>Case Type: <u>14  (Other Civil)</u><br><br><br>      **SUMMONS** |

THIS SUMMONS IS DIRECTED TO **PGJ Properties LLC.**

    1.    **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2.    **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

        Paul R. Hansmeier (MN Bar #387795)
        100 South Fifth Street, Suite 1900
        Minneapolis, MN 55402

    3.    **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether

- 1 -

Exhibit A

you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.    **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5.    **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6.    **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.


_____          December 30, 2015
Plaintiff's attorney's signature              Dated


Paul R. Hansmeier (MN Bar # 387795)
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
E-mail: mail@classjustice.org
Phone: (612) 326-9801


- 2 -

STATE OF MINNESOTA                              DISTRICT COURT

COUNTY OF HENNEPIN                      FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| DISABILITY SUPPORT ALLIANCE, on behalf of its members; and SCOTT SMITH,<br><br>*Plaintiffs,*<br><br>v.<br><br>PGJ PROPERTIES LLC,<br><br>*Defendant* | Case No. _____<br><br>Case Type: <u>14 (Other Civil)</u><br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiffs Disability Support Alliance and Scott Smith, by and through the undersigned counsel, bring this action against PGJ Properties LLC, a Minnesota limited liability company, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, for violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A (the "MHRA"), and for the commission of a Bias Offense, Minn. Stat. § 611A.79, and allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities. Defendant has failed to remove architectural barriers in the parking lot of the shopping center known as "Shady Oak Center", even though such removal is readily achievable.

- 1 -

2.    The violations alleged in this complaint occurred at "Shady Oak Center", located at 6401 City West Parkway, Eden Prairie, MN 55344.

3.    Defendant's failure to provide equal access to "Shady Oak Center" violates the mandates of the ADA and the MHRA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

4.    Defendant's conduct constitutes an ongoing and continuous violation of the law.

5.    Accordingly, Plaintiffs seek a declaration that Defendant's facilities violate federal and state law and an injunction requiring Defendant to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiffs further request that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendant continues to comply with the relevant requirements of the ADA and MHRA.

## JURISDICTION AND VENUE

6.    This is an action for declaratory and injunctive relief, pursuant to Title III of the ADA, for damages, civil penalties, and injunctive relief pursuant to the MHRA and for damages pursuant to the Minnesota Bias Offense statutes. This Court has concurrent jurisdiction over the federal cause of action, and has original jurisdiction over the state cause of action pursuant to Minn. Stat. 363A.33 and Minn. Stat. 611A.79.

7.    Venue in this judicial district is proper because Defendant is located and transacts business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

8.    Plaintiff Disability Support Alliance is a Minnesota nonprofit corporation organized under Chapter 317A of the Minnesota Statutes. Each member of the Disability Support Alliance is a person with a disability who is recognized as a member of a protected class under federal and state law. The purpose of the Disability Support Alliance is to "eliminate discrimination on the basis of disability" and "promote the betterment of the lives of those living with disabilities." Disability Support Alliance's members have long been actively promoting the Disability Support Alliance's organizational mission in their individual capacities and are continuing their efforts through the Disability Support Alliance. Disability Support Alliance's members live in Minnesota.

9.    Plaintiff Scott Smith is a resident of the city of Burnsville, Minnesota. Plaintiff Smith is a member of the Disability Support Alliance. Plaintiff Smith suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2), and as defined by the MHRA, Minn. Stat. 363A.03, Subd. 12. Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 et seq., and under the MHRA.

10.    Mr. Smith suffers from arthrogryposis, a rare and disabling congenital joint contracture that for Mr. Smith results in muscle weakness and an inability to stand or walk. Mr. Smith uses a wheelchair for mobility. As a person with a disability, Mr. Smith has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

11.    Defendant PGJ Properties LLC, a Minnesota limited liability company, is the owner of the real property and improvements which are the subject of this ac-

- 3 -

tion, the shopping center, "Shady Oak Center", a place of public accommodation within the meaning of the ADA and MHRA, located at the street address of 6401 City West Parkway, Eden Prairie, MN 55344.

## FACTUAL BACKGROUND

12.    On or around December 17, 2015, Plaintiff Smith visited "Shady Oak Center" in Eden Prairie, Minnesota.

13.    Upon arrival, Plaintiff Smith found an inadequate number of accessible parking spaces with adjacent access aisles in the parking lot that serves "Shady Oak Center" customers.

14.    Despite having over two hundred eighty total parking spaces, "Shady Oak Center" had only two parking spaces with adjacent access aisles, instead of the required seven. Eight additional parking spaces were marked as accessible parking spaces through signage and paint, but they lacked adjacent access aisles. Photographs in Exhibit A to this Complaint show the accessible parking spaces at "Shady Oak Center".

15.    Parking in a space that does not have an access aisle is dangerous for Plaintiff Smith, because vehicles could park in the spaces directly adjacent to his car while he patronizes "Shady Oak Center". Plaintiff Smith's car uses a car-top wheelchair carrier, and this would be impossible to operate with a vehicle parked in the adjacent parking space, where Plaintiff Smith would be trapped outside his car until the obstructing vehicle left the space.

16.    In light of the architectural barriers at "Shady Oak Center", Plaintiff Smith and other members of the Disability Support Alliance are deterred from visiting "Shady Oak Center" in the future. Plaintiff Smith and other Disability Support Alliance members intend to return to "Shady Oak Center" to patronize the facility, but these architectural barriers deter them from doing so. They plan to return and

- 4 -

patronize "Shady Oak Center" when they learn that the premises have been made fully accessible to persons who use wheelchairs for mobility.

17.    Plaintiff Smith attempted to access Defendant's premises, but could not do so independently on a full and equal basis because of his disabilities, due to the physical barriers to access and violations of the ADA and MHRA that exist at Defendant's premises. As a result of Defendant's non-compliance with the ADA and MHRA, Plaintiff Smith and members of the Disability Support Alliance cannot independently access the facilities and/or are excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

18.    On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

   a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

   c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

- 5 -

d. Individuals with disabilities continually encounter various forms of discrimination; and

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

19. Congress explicitly stated that the purpose of the ADA was to:

a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

20. Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

21. The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or

- 6 -

fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

22.    Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

23.    In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

24.    In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

25.    The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

26.    On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

27.    On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

28.    The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The

- 7 -

2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

29.    Defendant has discriminated against Plaintiff Smith and members of the Disability Support Alliance on the basis of their disabilities by failing to comply with the requirements of the ADA, the ADAAG, and the MHRA with regard to "Shady Oak Center". A specific, though not exclusive, list of unlawful physical barriers and ADA violations present at "Shady Oak Center" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

  a. The parking that "Shady Oak Center" provides for its customers had over 280 total parking spaces but had only 2 accessible parking spaces with adjacent access aisles, in violation of ADAAG 208.2 and 502.2.

30.    The above listing is not to be considered all-inclusive of the barriers and violations of the ADA and MHRA encountered by Plaintiffs or which exist at "Shady Oak Center".

31.    In order to fully remedy the discriminatory conditions, Plaintiffs require an inspection of "Shady Oak Center" in order to photograph and measure all such barriers to access and violations of the ADA, ADAAG, and MHRA.

32.    Compliance with the ADA standards, the ADAAG, and the MHRA is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards, the ADAAG, and the MHRA is readily achievable by Defendant due to the lack of difficulty and low cost

- 8 -

of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating designated accessible parking spaces. 28 C.F.R. § 36.304(b).

33.    Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

34.    As a person with a disability, Plaintiff Smith has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein. As an organization devoted to reducing discrimination against persons with disabilities, and whose members have been directly impacted by the discriminatory conditions at "Shady Oak Center", Disability Support Alliance has an interest in remediating the barriers at the subject premises.

35.    Without injunctive relief, Defendant's failure to remove accessibility barriers will continue to cause injury to Plaintiffs, who will continue to be unable to independently access "Shady Oak Center" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of their rights under the ADA and MHRA.

- 9 -

## FIRST CAUSE OF ACTION

### Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

36.    Plaintiffs incorporate and reallege the above paragraphs.

37.    Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

38.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

39.    Defendant has discriminated against Plaintiffs and others in that it failed to make its place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Smith and Disability Support Alliance members have been denied full and equal access to "Shady Oak Center" and/or have been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

40.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. Defendant's violations of the ADA and ADAAG are ongoing.

- 10 -

41.     Defendant has failed to remove architectural barriers to full and equal access by Plaintiff Smith and other members of Disability Support Alliance, even though removing the barriers is readily achievable.

42.     Plaintiff Smith and other members of Disability Support Alliance plan to visit "Shady Oak Center" again in the near future. Plaintiffs are without adequate remedy at law, have suffered and are suffering irreparable harm, and reasonably anticipate that they will continue to suffer irreparable harm upon their planned return visit to "Shady Oak Center" unless and until Defendant is required to remove the physical barriers to access and ADA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

43.     This Court has authority under 42 U.S.C. § 12188 to grant Plaintiffs injunctive relief, including an order requiring Defendant to make "Shady Oak Center" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Shady Oak Center" until such time as Defendant cures the access barriers.

44.     Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

## SECOND CAUSE OF ACTION
### Violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A

45.     Plaintiffs incorporate and reallege the above paragraphs.

46.     Minn. Stat. 363A.11 provides:

It is an unfair discriminatory practice:

(1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and

- 11 -

accommodations of a place of public accommodation because of [...] disability [...]; or

    (2) for a place of public accommodation not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person.

47.    Under the general prohibitions established by the MHRA, Minn. Stat. 363A.11, Subd. 2, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

48.    Defendant has engaged in unfair discriminatory practices against Plaintiffs and others in that it has failed to make its place of public accommodation fully accessible to persons with disabilities on a full and equal basis. The acts herein constitute violations of the MHRA, 363A.11. Plaintiffs have been denied full and equal access to "Shady Oak Center", and/or have been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations offered therein on a full and equal basis.

49.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. Defendant's violations of the MHRA are ongoing.

50.    Defendant has failed to remove architectural barriers to full and equal access by Plaintiffs and other persons with disabilities, even though removing the architectural barriers is readily achievable.

51.    Plaintiff Smith and other members of Disability Support Alliance are without adequate remedy at law, have suffered and are suffering irreparable harm, and reasonably anticipate that they will continue to suffer irreparable harm upon their planned return visit to "Shady Oak Center", unless and until Defendant is required to remove the physical barriers to access and MHRA violations that exist at

- 12 -

Defendant's place of public accommodation, including those set forth specifically herein.

52.    This Court has authority under Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3–4, to issue an order directing Defendant to cease and desist from its unfair discriminatory practices and to take affirmative action to make its facilities readily accessible to and independently usable by individuals with disabilities. The Court furthermore has authority under these statutory provisions of the MHRA to order Defendant to pay a civil penalty to the state.

53.    Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees from Defendant as part of the costs, pursuant to Minn. Stat. 363A.33, Subd. 7.

## THIRD CAUSE OF ACTION
### Civil Damages for Bias Offenses

54.    Plaintiffs incorporate and reallege the above paragraphs. Defendant has committed an unfair discriminatory act as set forth in section 363A.11 of the Minnesota Statutes.

55.    Section 363A.30 of the Minnesota Statutes provides that any person who commits an unfair discriminatory act under section 363A.11 of the Minnesota Statutes shall be guilty of a misdemeanor.

56.    Section 611A.79 of the Minnesota Statutes provides a person who is damaged by a bias offense has a civil cause of action against the person who committed the offense.

57.    Defendant committed a bias offense against Plaintiffs by violating the MHRA's public accommodation provisions and by discriminating against Plaintiffs on the basis of their respective disabilities.

- 13 -

**WHEREFORE**, Plaintiffs respectfully request:

a. That the Court issue a Declaratory Judgment that determines that Defendant's facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG, and that Defendant's conduct and/or inaction constitutes an unfair discriminatory practice under the MHRA.

b. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a), Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3, enjoining Defendant from continuing its discriminatory practices; including an order directing Defendant to make all readily achievable alterations to its facilities so as to remove physical barriers to access and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA and the MHRA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

c. That the Court order Defendant to pay a civil penalty to the state pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4.

d. That the Court award Plaintiffs damages, to be paid by Defendant pursuant to Minn. Stat. 363A.33, Subd. 6, Minn. Stat. 363A. 29, Subd. 4 and Minn. Stat. 611A.79, Subd. 2.

- 14 -

e. That the Court award Plaintiffs their reasonable attorneys' fees, litiga-
tion expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28
C.F.R. § 36.505, and Minn. Stat. 363A.33, Subd. 7, or as otherwise pro-
vided by law; and

f. That the Court issue such other relief as it deems just and proper,
and/or is allowable under Title III of the ADA or the MHRA.

DATED: <u>December 30, 2015</u>

<u>/s/ Paul Hansmeier</u>
Paul R. Hansmeier (MN Bar # 387795)
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
E-mail: mail@classjustice.org
Phone: (612) 326-9801

- 15 -

## ACKNOWLEDGMENT

Pursuant to Minn. Stat. § 549.211, the undersigned hereby acknowledges that monetary and other sanctions may be imposed for presenting a position to the Court that is unwarranted or for an improper purpose, as more fully defined in that statute.

DATED: __December 30, 2015__

                                        By:     /s/ Paul Hansmeier
                                                Paul R. Hansmeier (MN Bar #387795)

- 16 -

# EXHIBIT A















